UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:20-CR-32-HAB |
| ) | |
| LUIS RODRIGUEZ-SOLORIO ) | |

**OPINION AND ORDER**

Defendant comes before the Court seeking to have his confession, and all physical evidence seized because of that confession, suppressed. Defendant asserts that Task Force Officer Caleb Anderson's repeated threat that Defendant would spend his life in prison, as well as Anderson's threat to imprison Defendant's pregnant girlfriend, overcame his free will, rendering his confession involuntary. The Government disagrees. The Court held an evidentiary hearing on Defendant's motion and has allowed the parties to brief the issues. This matter is now ripe for determination.

**A.    Factual Background**

In February 2020, Defendant, using the screen name "Ese Flaco," posted a Snapchat video showing a Glock semi-automatic firearm equipped with a conversion device. The conversion device permitted the firearm to fire in fully automatic mode. Law enforcement served a subpoena on Snapchat and confirmed that Defendant was the owner of the "Ese Flaco" account. While law enforcement was unable to determine exactly where Defendant lived, they were able to narrow it down to a single apartment complex. A pole camera was installed at the complex, and by monitoring that camera officers were able to determine Defendant's address.

On May 28, 2020, an officer monitoring Defendant's residence attempted to perform a traffic stop on a vehicle driven by Defendant. Defendant initially stopped, but then led officers on an extended, high-speed chase. The chase reached speeds of up to eighty miles per hour. Defendant

led officers not only through city streets but, at one point, through the Foster Park Golf Course. The chase ended in an apartment complex where Defendant abandoned his vehicle. He was eventually caught after a short foot chase.

Defendant was read his *Miranda* rights and taken to a nearby hospital for medical clearance. He advised that he fled because he did not have a driver's license and, having been previously deported, did not want to be deported again. Upon being advised by a nurse that he was lucky not to have been shot by pursuing officers, Defendant responded that officers were "lucky" he didn't have his gun, which he described as "a full auto."

Believing that Defendant had possessed the fully automatic firearm during the chase, and further believing that Defendant had thrown the firearm from the vehicle during the chase, TFO Anderson and Task Force Officer Phillip Ealing searched Foster Park for the firearm. No firearm was found. Law enforcement also obtained a search warrant for Defendant's apartment, but also failed to find the firearm there.

By the time Defendant was transferred to an interview room for questioning it was 3:42 a.m. Defendant spent the first hour by himself in the room. He appears to be both cold and tired, putting his arms inside his shirt and trying to sleep. When TFOs Anderson and Ealing began the interview, Defendant denied possessing anything illegal and further denied having anything illegal in his vehicle. After approximately ten minutes, TFO Anderson began threatening Defendant with potential murder charges should Defendant's firearm be used in a subsequent shooting. TFO Anderson's statements included:

- "here's the thing that you need to think about, if a kid finds that gun that you tossed…listen to me…if a kid finds that and shoots himself and gets killed, instead of you looking at

running from the police and having a gun, you will be looking at fucking murder and you will be in prison the rest of your life;"

- "[w]e need to know where that gun is…if a kid finds that instead of you looking at a couple of years in prison, you will be there forever;"

- "you want to play games and bullshit us and a kid gets hurt, you are going away forever;"

- "if someone gets hurt, you are done. Forget about being deported, you will be in prison forever;" and

- "[i]f at any time during that pursuit you threw the gun and a kid finds it and blows their head off, you are in bad shape."

These threats did not immediately lead to Defendant's honest cooperation. Defendant admitting possessing a Glock pistol but claimed that he had sold it. Defendant also denied that he was the individual in the Snapchat video with the gun. After TFO Anderson explained that Defendant could be facing an additional charge for lying to federal agents, Defendant finally admitted that the Glock pistol, four magazines, ammunition, and a small amount of marijuana were in a grocery bag at his apartment. The agents advised Defendant that his apartment had been searched and that nothing had been found. Defendant then suggested that, perhaps, his pregnant girlfriend might be able to help the agents locate the firearm. This prompted another set of threats from TFO Anderson, each to the effect that if Defendant's girlfriend did not cooperate then she would give birth to her child in federal prison.

Defendant was eventually able to contact his girlfriend on the phone, urging her to cooperate with the agents. The girlfriend then spoke with the agents and advised that the firearm was at her grandmother's house. The firearm was not at the grandmother's house; the girlfriend had it with her. Using the pole camera, law enforcement was later able to determine that the

3

girlfriend had gone to Defendant's apartment to retrieve the firearm. Officers were able to retrieve the firearm from the residents at the girlfriend's location and, via a later search warrant, discovered a gun box, magazines, ammunition, and a small amount of marijuana.

**B.   Legal Analysis**

Before a confession is received into evidence, a court must "determine any issue as to voluntariness." 18 U.S.C. § 3501(a). The statutory factors to be considered are:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

*Id*. at § 3501(b). These factors are not exclusive, however. Rather, courts must consider the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Lentz v. Kennedy*, 967 F.3d 675, 691 (7th Cir. 2020) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). In considering the totality of the circumstances, the Supreme Court has endorsed factors such as the age of the defendant, his education level, intelligence, whether he was advised of his *Miranda* rights, the length of detention, the repeated and prolonged nature of the questions, and the use of physical punishment such as deprivation of food or sleep. *Bustamonte*, 412 U.S. at 226.

While Defendant references the conditions of the interview, specifically the temperature of the room and the late hour, Defendant focuses on the threats made by TFO Anderson throughout the interview. While it was once true that a confession induced by "any direct or implied promises, however slight," violated the Constitution, *Bram v. United States*, 168 U.S. 532, 542–43 (1897),

4

this is no longer the rule. *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991). Rather, courts must analyze alleged threats or promises as part of the totality of the circumstances. *See id*. at 285–86.

If an officer promises a suspect that if he tells police everything he knows nothing he says will be used against him, the suspect would have "a strong argument that any ensuing confession had been extracted by fraud and was involuntary." *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990). However, if the officer simply promises to inform prosecutors of a suspect's cooperation, or advises a suspect that cooperation is often helpful to an accused, "there could be no serious argument that he had been coerced to confess." *Id*.; *see also United States v. Long*, 852 F.2d 975, 978 (7th Cir. 1988) ("[L]eading the defendant to believe that he or she will receive lenient treatment when this is quite unlikely is improper, whereas, making a promise to bring the defendant's cooperation to the attention of the prosecutor or to seek leniency, without more, typically is not.").

Along the same line, threats that are likely to cause a suspect to believe that he will suffer serious adverse consequences if he does not cooperate are likely problematic. When threats of this type are made, the resulting confession can be found to be involuntary. *United States v. Rodgers*, 186 F.Supp.2d 971, 975 (E.D. Wis. 2002). "Thus, a court should evaluate threats and promises along a continuum. At one end lie threats of serious adverse consequences and promises of substantial leniency and at the other are suggestions that cooperation is a good thing and silence unhelpful. The closer an officer's statement comes to the former, the more likely the resulting confession is involuntary." *Id*. at 976.

The easiest issue to deal with are the threats directed at Defendant's girlfriend. As the Government notes, Defendant had already confessed to possessing the firearm, magazines, ammunition, and marijuana when TFO Anderson made these statements. It is axiomatic, then, that

they could not have coerced Defendant into making the confession. *See United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007) ("Confessions or other admissions obtained in the course of an interrogation are deemed involuntary and therefore inadmissible only if they are procured by threats or promises."). Any statement TFO Anderson made after the confession is ultimately irrelevant to the question of whether the confession was voluntary. The Court notes that Defendant makes no argument to the contrary in his reply.

With respect to the threats made by TFO Anderson to the effect that Defendant would face life in prison if the firearm he discarded were found and used in a homicide, the Government makes a simple, and the Court finds compelling, argument. Remember, when Defendant was being interviewed by the agents, he knew that he had not discarded the firearm during the chase. Instead, he believed that the firearm was in a grocery bag in his apartment. Defendant knew, then, that the factual underpinning for TFO Anderson's threats—that the firearm was lying on the ground in a park for someone to find—was false. To Defendant, then, TFO Anderson's threats were no different than him threatening extended jail time should pigs fly, hell freeze over, shrimp learn to whistle, or any other idiom expressing impossibility.

It is difficult, and perhaps impossible, to imagine how TFO Anderson's threats could have swayed Defendant at all. Defendant had every reason "not to believe that the police had ample power to carry out their threats." *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). There may very well be individuals, having discarded a firearm during a police chase, whose will would be overcome by the kind of threats made by TFO Anderson. But Defendant knew that he had not discarded the firearm, that the firearm was safe in his apartment (or with his girlfriend), and would not be used by a stranger to commit a homicide. The threat was empty and, the Court concludes, could not have overcome Defendant's free will.

With the empty threat gone, the Court does not conclude that the temperature of the interview room (which the agents testified was comfortable) or the time of day that the interview occurred is enough to render the confession inadmissible. Accordingly, the Court concludes that the confession is admissible, and Defendant's motion to suppress must be denied.

**C.     Conclusion**

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 24) is DENIED.

SO ORDERED on February 24, 2021.

                                              s/ Holly A. Brady
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT